# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SCOTT LOWE,<br><br>         Plaintiff,<br><br> v.<br><br>USMS JEFFERSON, et al.,<br><br>         Defendants. | Case No. 2:23-cv-00211-GMN-BNW<br><br>SCREENING ORDER |

    Federal inmate Scott Lowe brings this *pro se* civil-rights action, claiming that his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Eighth and Fourteenth Amendments were violated when he was denied Suboxone medication to treat his opioid addiction while he was housed at Core Civic's Nevada Southern Detention Center ("NSDC"). (ECF No. 1-1). Lowe has paid the full $402 filing fee for this action. (ECF No. 4). According to the Federal Bureau of Prison inmate database, Lowe has been transferred from NSDC and is currently housed at Coleman Medium FCI in Florida. But Lowe has not filed his updated address with the Court. Nevada Local Rule IA 3-1 provides that a "pro se party must immediately file with the court written notification of any change of mailing address, email address, telephone number, or facsimile number[,]" and failure to comply could result in sanctions like dismissal. The Court will grant Lowe an extension of time to file his updated address with the Court.

    Lowe is an inmate who seeks relief from an employee of a governmental entity, so the Court screens his Complaint under § 1915A. Because Lowe sues individuals acting under the color of federal law, not state law, the Court liberally construes his damage claims as being brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The Court liberally construes the Complaint as bringing claims under the Fifth Amendment's Due Process Clause against Dr. Singh and Jefferson for inadequate medical care. The Court finds that Lowe does not have a *Bivens* damage claim against Dr. Singh, so it dismisses that claim with prejudice. The Court finds that Lowe fails to state a colorable medical-needs claim against

Jefferson, so it dismisses that claim with leave to amend. The Court dismisses Lowe's injunctive relief claims as moot because he is no longer housed at NSDC. Finally, the Court dismisses the claims under the ADA and RA about disability discrimination with prejudice because Lowe's claims sound in medical malpractice or negligence, not discrimination.

## I.     SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). Additionally, the Prison Litigation Reform Act ("PLRA") requires a federal court to dismiss a prisoner's claim if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *accord* Fed. R. Civ. P. 12(b)(6).

Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plaintiff must provide more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Although allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers, *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), all or part of a complaint filed by a prisoner may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations like fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). If it is clear from the face of the complaint that any deficiencies could not be cured by amendment, leave to amend is not required. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.     SCREENING OF COMPLAINT

### A.     Factual allegations

Lowe is a federal inmate who was previously housed at NSDC, which he alleges is operated by private entity "Core Civic."[1] (ECF No. 1-1 at 4). Lowe has a severe opioid addiction and has taken Suboxone medication to treat it since he was 18-years old. (*Id.*) Lowe also has heart problems, is an epileptic, and suffers from "severe neuropathy." (*Id.* at 9). When Lowe was transferred to NSDC on December 29, 2022, the intake nurse said his Suboxone prescription would be immediately discontinued, and he'd be prescribed medication for his withdrawal symptoms. (*Id.* at 4).

Lowe saw Dr. Singh on January 12, 2023, who offered to prescribed Lowe the blood-pressure medication "Colonodine"[2] (*Id.* at 5). Dr. Singh told Lowe that the U.S. Marshals Service ("USMS") would not allow Core Civic to prescribe medication-assisted treatment ("MAT") medications like Suboxone to treat his opioid addiction. (*Id.*) Nurse Tsui confirmed Dr. Singh's statement. (*Id.*) Lowe told Dr. Singh that he was under USMS's custody at his last housing

---

[1] Lowe might mean CoreCivic, which the Court understands is the entity that contracts with the U.S. Marshals Service to house detainees at NSDC. *See* CoreCivic at https://www.corecivic.com/facilities/nevada-southern-detention-center (last visited on September 29, 2023).

[2] Lowe might mean the drug clonidine.

placement and was prescribed MAT medications at that facility. (*Id.*)  Dr. Singh said, "that's different," and told Lowe he wasn't licensed to prescribe Suboxone. (*Id.*)  Lowe later learned that Dr. Singh was licensed to prescribe Suboxone or, alternatively, a "Sublocade" injection every 30-days. (*Id.* at 6).

An inmate request form that Lowe attached to the Complaint purports to state that on or about January 31, 2023, Health Services Administrator K. D'Amico, "Dr. Sing, Mr. Miller, and Ms. Tsui . . . had a meeting to review" Lowe's request for Suboxone medication. (*Id.* at 15).  They explained, "[w]e do not stock this medication on our current formulary.  An alternative therapeutic protocol was ordered by Dr. Sing.  The detainee is aware of this resolution.  Ms. Tsui will be doing another physical assessment on this detainee this week.  Thank you." (*Id.* at 15).

On February 2, 2023, Dr. Singh again reiterated to Lowe that USMS would not allow him to prescribe Suboxone at NSDC. (*Id.*)  Lowe experienced the following withdrawal symptoms during his first month at NSDC: vomiting, diarrhea, extreme body aches and pains, and difficulty eating and sleeping. (*Id.*)

Around two weeks after Lowe was transferred to NSDC, he spoke with Jefferson who said he would advise the Health Services Advisor and Dr. Singh to continue Lowe's Suboxone medication. (*Id.*)  Lowe sent several electronic kites to Jefferson "with almost no response to them." (*Id.*)  Lowe has been told by several Core Civic employees that Core Civic does not allow MAT treatment, or any other treatment, for opioid addiction. (*Id.*)  Lowe filed several sick calls and grievances and only received a few back. (*Id.*)  In response to Lowe's appeal of the grievance response, he was told "alternative treatment is available but not Suboxone." (*Id.*)

Lowe does not believe the medication Dr. Singh prescribed can be considered an "alternative" treatment for opioid addiction. (*Id.* at 7).  Lowe has told everyone that the BOP and jails and prisons across the country consider opioid addiction to be a serious disorder and prescribe MAT medications like Suboxone to treat it. (*Id.*)  Suboxone works to treat Lowe's opioid addiction: he has no cravings or feelings of relapse when he takes the medication but instead feels "normal" and can hold a steady job and care for his children. (*Id.* at 8).  Lowe still suffers pain and

withdrawal symptoms. (*Id.*)  These symptoms prevent Lowe from exercising and eating proper meals. (*Id.* at 9).

Core Civic's handbook states that "medical treatment for pregnant only chemical dependent inmates is provided." (*Id.* at 9).  The handbook states there are other therapeutic options for opioid abuse, but they have not been offered to Lowe. (*Id.*)  NSDC's warden told Lowe during a walkthrough, "I'm sure MAT will be coming soon here but the issue hasn't been pushed yet." (*Id.* at 8).

Based on these allegations, Lowe contends that his rights under the ADA, RA, and Eighth and Fourteenth Amendments were violated.  Lowe sues Jefferson and Dr. Singh.  He brings one claim and seeks monetary and injunctive relief requiring that he be prescribed Suboxone to treat his opioid addiction.

**B.     Legal standard for *Bivens* damage claims**

42 U.S.C. § 1983 "permits the recovery of damages for constitutional violations by persons acting under the color of *state* law." *Hernandez v. Mesa*, 589 U.S. ---, 140 S. Ct. 735, 747 (2020). In *Bivens*, the Supreme Court recognized for the first time that an implied cause of action for damages would lie against federal narcotics agents for their alleged Fourth Amendment violations while searching the petitioner's apartment. 403 U.S. 388.  The Supreme Court has "described *Bivens* as a more limited federal analog to § 1983." *Id.* (cleaned up) (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)).  And it has explained that "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

Recognizing a new cause of action under *Bivens* is a "disfavored judicial activity" that the Supreme Court has done on only two other occasions. *Egbert v. Boule*, 596 U.S. ---, 142 S. Ct. 1793, 1802–03 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). In *Davis v. Passman*, the Court held that "a former congressional staffer's Fifth Amendment sex-discrimination claim" for damages would lie against a United States Congressman. 442 U.S. 228 (1979).  And in *Carlson v. Green*, the Supreme Court held that "a federal prisoner's inadequate-care claim under the Eighth Amendment" for damages would lie against federal prison officials. 446 U.S. 14 (1980).

5

In determining whether a *Bivens* action may lie, courts must engage in a two-step process. *See Egbert*, 142 S. Ct. at 1803. First, the court must ask "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the Court has implied a damages action." *Id.* (cleaned up) (quoting *Ziglar*, 582 U.S. at 139). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernández*, 140 S. Ct. at 743). These "steps often resolve into a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*

### 1. Lowe does not have a *Bivens* claim against Core Civic employee Dr. Singh.

Based on the allegations, Dr. Singh is employed by Core Civic and the "head" physician at NSDC. Dr. Singh refused to prescribe Suboxone to treat Lowe's opioid addiction because either Core Civic or the USMS has a policy that prevents medical staff from prescribing Suboxone—or other MAT medications—to inmates at NSDC. Dr. Singh prescribed Colonodine instead; it is not clear from the allegations whether Lowe took that medication. But Lowe continued to suffer pain and other withdrawal symptoms from his opioid addiction while he was housed at NSDC.

A prisoner's medical-needs claim arises under the Eighth Amendment's proscription against cruel and unusual punishment, but a pretrial detainee has the right to be free from "*all* punishment . . . ." *See Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1163–64 (9th Cir. 2020). Lowe does not clearly allege whether he was a pretrial detainee or a prisoner serving a custodial sentence at NSDC during the events of the Complaint. Based on the allegations and documents attached to the Complaint, the Court assumes that Lowe was a pretrial detainee. (*See* ECF No. 1-1 at 17). To the extent Lowe was a federal pretrial detainee at NSDC during the events of the Complaint, his medical-needs claim arises under the Fifth Amendment's Due Process Clause. *Compare Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (explaining that state pretrial detainees

may raise inadequate medical care claims under the Fourteenth Amendment's Due Process Clause), *with Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (explaining that "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.").

The Court evaluates medical-needs claims brought by pretrial detainees under an objective deliberate indifference standard. *See Gordon,* 888 F.3d at 1125 (regarding pretrial detainees in state custody). The elements of a pretrial detainee's inadequate medical care claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* The third element requires the defendant's conduct to be "objectively unreasonable," a test that turns on the facts and circumstances of each particular case. *Id.* A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

The Complaint appears to bring a Fifth Amendment Due Process Clause claim against Core Civic employee Dr. Singh for deliberate indifference to serious medical needs. This claim is fundamentally different from the three categories for which the Supreme Court has authorized *Bivens* damage claims because it raises issues about deliberate indifference to a pretrial detainee's medical needs and targets an employee of a privately operated detention center. *See, e.g.*, *Carlson*, 446 U.S. at 16 (concerning federal prison officials' alleged indifference to a prisoner's serious medical needs); *Marquez v. C. Rodriguez*, --- F.4th ---, 2023 WL 5733889, at *4 (9th Cir. Sept. 6, 2023) (explaining that the Supreme Court determined the constitutional right at issue in *Abbasi*, 582 U.S. at 137–38, 147—a failure-to-protect claim under the Fifth Amendment—presented a new *Bivens* context in part because *Carlson* was predicated on the Eighth Amendment, not the Fifth Amendment). Because this case presents a new *Bivens* context, the Court must consider whether special factors counsel against extending *Bivens* to this case.

Lowe has remedies available other than a *Bivens* claim. The Supreme Court has held that if a prisoner seeks damages from an employee of a privately operated federal prison, "where the conduct allegedly amounts to a violation of the Eighth Amendment" and "is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law." *Minneci v. Pollard*, 565 U.S. 118, 131 (2012). The court "cannot imply a *Bivens* remedy in such a case." *Id.* Like the federal prisoner in *Minneci*, Lowe can bring a state-law tort action against Dr. Singh because that person is an employee of a private corporation, not the federal government, and Nevada recognizes several species of negligence, including against a medical provider for negligent failure to diagnose or treat a condition. *See* Nev. Rev. Stat.§ 41A.015 (defining "professional negligence" as "the failure of a provider of health care, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care").

In sum, Lowe's claim against Dr. Singh arises in a context that is materially different from the three narrow *Bivens* actions that the Supreme Court recognized long ago. And Lowe has remedies available other than a *Bivens* claim. The Court declines to extend *Bivens* here and finds that Lowe has no *Bivens* cause of action for damages against Dr. Singh. The Fifth Amendment medical-needs claim against Dr. Singh for damages is therefore dismissed with prejudice.

### 2. Lowe does not state a colorable Fifth Amendment medical-needs claim against U.S. Marshals Service employee Jefferson.

Based on the allegations, Jefferson is a Liaison for the U.S. Marshals Service and thus employed by the federal government, not a private entity. Around two weeks after Lowe was transferred to NSDC, Jefferson said that he would "advise" the Health Services Advisor and Dr. Singh to continue Lowe's Suboxone medication. Thereafter, Lowe sent several electronic kites to Jefferson "with almost no response to them." Based on these allegations, the Court liberally construes the Complaint as bringing a Fifth Amendment Due Process Clause claim against U.S. Marshals Service employee Jefferson for deliberate indifference to serious medical needs.

As explained above, the Court evaluates medical-needs claims brought by pretrial detainees under an objective deliberate indifference standard. *See Gordon,* 888 F.3d at 1125. Lowe fails to state a colorable medical-needs claim against Jefferson. It is not clear from the allegations what intentional decision Jefferson made about Lowe's medical care at NSDC. To the extent Lowe contends that Jefferson failed to either change the formulary policy at NSDC or order others, like Dr. Singh, to continue Lowe's Suboxone prescription, he does not allege facts to plausibly suggest that Jefferson had the authority to do either. For example, there are no factual allegations that Jefferson is a policymaker, was authorized to make medical decisions, or could override Dr. Singh's medical decisions.

Although it appears unlikely that Lowe could allege additional facts to support this missing element, out of an abundance of caution, the Court dismisses the Fifth Amendment medical-needs claim against Jefferson with leave to amend. If Lowe elects to amend this claim, he must allege facts sufficient to show that *Bivens* extends to a claim against Jefferson, and he must otherwise allege facts sufficient to state a colorable Fifth Amendment medical-needs claim against Lowe.[3]

**C.   The claims for injunctive relief are dismissed as moot.**

In addition to monetary damages, Lowe also seeks an injunction requiring Core Civic and the USMS to prescribe him MAT medications like Suboxone or Sublocade while he is housed at NSDC. These claims are moot because Lowe is no longer housed at NSDC, and he has not demonstrated that (1) the duration of the medication condition at NSDC is too short to be fully litigated before it ceases and (2) there is a reasonable expectation that he will be returned to NSDC. *See Preiser v. Newkirk*, 422 U.S. 395, 402–03 (1975) (holding that a claim for injunctive relief was moot after the prisoner had been returned to a medium security prison and would be eligible for parole within days of decision); *Johnson v. Moore*, 948 F.2d 517, 519–22 (9th Cir. 1991) (holding that a claim for injunctive relief related to a prison's policies is moot where a prisoner has been transferred to another facility and shows no reasonable expectation of return); *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (explaining that exception to mootness when case is

---

[3] Because Lowe fails to state a colorable constitutional claim against Jefferson, the Court need not and does not reach the question of whether Lowe has a *Bivens* cause of action for damages against him.

capable of repetition yet evading review is limited to exceptional circumstances where there is a reasonable expectation that the same complaining party would be subject to the same action again); *Reimers v. State of Or.*, 863 F.2d 630, 632 (9th Cir. 1988) (explaining that "[c]ourts are reluctant to invoke [the exception to mootness] when the possibility of recurrence for the [litigant] depends upon his own wrongdoing"). Lowe's injunctive relief claims are therefore dismissed as moot.

### D. Lowe fails to state a colorable claim under either the ADA or the RA.

What remains are Lowe's claims for damages under the ADA and the RA. Both the ADA and the RA apply in the contexts of correctional centers and detention facilities. *See, e.g.*, *Pierce v. Orange Cnty.*, 526 F.3d 1190, 1214–15 (9th Cir. 2008) (concerning pretrial detention in county jail); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010) (concerning state parolees housed in county jails). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). "The ADA applies only to public entities," like any State, local government, or their entities, "whereas the RA proscribes discrimination in all federally funded programs." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (cleaned up); *accord* 42 U.S.C. § 12131(1).

A prisoner states a colorable claim under both the ADA and RA if he alleges that he was "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997). Although the ADA does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications

would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The Supreme Court has held that a prisoner may state an ADA claim based on the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *United States v. Georgia*, 546 U.S. 151, 157 (2006) (ADA and RA).

Courts apply the same analysis to claims brought under the ADA and RA. *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). And the proper defendant in an action under either statutory scheme is a government official in his or her official capacity[4] or the public entity responsible for the alleged discrimination. *See United States v. Georgia*, 546 U.S. 151, 153–54 (2006); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

Based on the allegations, Lowe is disabled because he has opioid use disorder. While Lowe was a free citizen and when he was housed in a county jail, Lowe was prescribed the MAT medication Suboxone to treat his condition. But Lowe was not prescribed Suboxone or any other MAT medication while he was detained at NDSC under a policy of either Core Civic or the USMS. Lowe fails to state a colorable claim under the ADA or the RA.

To the extent Lowe brings a claim under the ADA against the USMS or its contractor Core Civic, he fails to state a colorable claim because the ADA does not apply to the federal government or its agencies, contractors, or employees. *See, e.g.*, 42 U.S.C. § 12131(1) (defining "public entity" to mean only state and local governments and the National Railroad Passenger Corporation). As for Lowe's claim under the RA, there are no factual allegations that Lowe was denied MAT medication like Suboxone because of his disability. And Lowe does not allege that he sought a reasonable accommodation from detention officials for his disability and they failed to act. Rather, Lowe contends that detention officials or medical providers failed to adequately treat his disability. Because Lowe's claim sounds in medical malpractice or negligence, not discrimination, it fails to state a colorable claim under the RA. *Cf. Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th

---

[4] "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1980).

Cir. 2016), (explaining that "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability"). Because amendment would be futile, the claims under the ADA and RA are dismissed with prejudice.

### III. CONCLUSION

It is therefore ordered that Lowe has **until October 31**, to file his updated address with the Court.

It is further ordered that the constitutional claims for damages against Dr. Singh are **DISMISSED with prejudice** because amendment would be futile. Lowe may not pursue his *Bivens* claims for damages against Dr. Singh.

It is further ordered that the constitutional claims for damages against USMS Jefferson are **DISMISSED without prejudice and with leave to amend**.

It is further ordered that the claims for injunctive relief are **DISMISSED as moot**.

It is further ordered that the claims under the ADA and RA about disability discrimination are **DISMISSED with prejudice** because amendment would be futile.

It is further ordered that Dr. Singh and USMS Jefferson are **DISMISSED without prejudice** from this action.

It is further ordered that Lowe has **until October 31**, to file a first amended complaint.

It is further ordered that if Lowe chooses to file an amended complaint, he should use the approved form and he will title it "First Amended Complaint." Lowe is advised that the Court will screen the amended complaint in a separate screening order and the screening process will take several months. If Lowe chooses not to file an amended complaint, this action will be subject to dismissal without prejudice for failure to state a claim.

The Clerk of the Court is directed to **FILE** the Complaint and exhibits (ECF No. 1-1) and **SEND** Plaintiff Scott Lowe the approved form for filing a civil rights complaint by an inmate, instructions for the same, and a copy of his Complaint and exhibits (ECF No. 1-1).

The Clerk of the Court is further directed to **SEND** Plaintiff Scott Lowe a courtesy copy of this order and the above-referenced attachments by mailing the same to Scott Lowe, #40204-013, at FCI Coleman Medium, 846 NE 54th Terrace, Sumterville, Florida 33521.

DATED: September 29, 2023

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE